WINIFRED H. KIMBALL

*vs.*

LENISE S. CUMMINGS

Cumberland.   Opinion, October 10, 1949.

*Walter M. Tapley, Jr.,* for plaintiff.

*Harry C. Libby,* for defendant.

SITTING: MURCHIE, C. J., THAXTER, FELLOWS, MERRILL, NULTY, WILLIAMSON, JJ.

NULTY, J.   This matter comes before this court on exceptions to a directed verdict for the defendant granted at the close of the testimony, the defendant having rested without introducing any evidence.   The action is for alienation of affections and the writ is dated August 25, 1947, and the

case was heard before a jury at the February Term 1948 of the Superior Court for the County of Cumberland. The action is brought under the provisions of Sec. 41 of Chapter 153 of the Revised Statutes of 1944, and is a special remedy given by statute upon particular facts and is subject to the conditions and limitations defined by the Legislature. *Pray* v. *Millett,* 122 Me. 40; 118 A. 721. The essential part of the statute relating to this action directs that action shall be "brought - - - - - - - - within 3 years after the discovery of such offense." Under this statute the plaintiff must allege and prove the alienation of the husband's affections as of a day within three years of the date of the writ, or, alleging the alienation as of a day before that time, then she additionally must allege and show that the discovery thereof by her was within three years of the bringing of the action. *Pray* v. *Millett, supra.* Plaintiff's allegation of the alienation is laid within three years of the date of the writ, to wit, January 1, 1945. There is evidence from the record that the plaintiff and her husband resided in Cape Elizabeth, Maine, next door to the defendant for the period from 1939 to 1943 and that during that time plaintiff, on one occasion, had a conference with the defendant in which the subject of defendant's attentions to plaintiff's husband was discussed, and it further appears that defendant resided on Broadway in South Portland, Maine, during the period from 1943 to 1945 and, during that time the automobile of plaintiff's husband was seen by plaintiff on numerous occasions parked in that vicinity. There is further evidence in the record that plaintiff frequently remonstrated with her husband at various times during the period from 1940 to 1945 because of defendant's attentions to plaintiff's husband. The record further shows that plaintiff's husband either in 1944 or 1945 (the record is not entirely clear as to the exact time) began to frequently stay away from his home in Cape Elizabeth and that he stayed at times when he was away with a former friend in Yarmouth, Maine. However, plaintiff's husband returned to Cape Elizabeth

from time to time up to March, 1945, when he definitely went to live in Yarmouth and had a room in the home of his former friend. There is also evidence that during the summer of 1945 plaintiff's husband spent a portion of his time, at least, on the family farm in Freeport where he became interested in the poultry business and that plaintiff occasionally visited him at the farm in Freeport. The record further shows that plaintiff's husband, after March, 1945, continued to occasionally visit plaintiff at the Cape Elizabeth home and that these occasional visits continued until the first of January, 1948, during a part of which time plaintiff was in a hospital where plaintiff's husband visited her practically every day. The record also shows that in 1945 defendant left South Portland and went to live in Yarmouth in the same house in which plaintiff's husband had a room.

Some of the important questions of fact in this case are, did the defendant alienate the affections of the plaintiff's husband? If so, when did the alienation occur, and, if occurring, when was it discovered by the plaintiff? These facts and all other facts connected with the action are peculiarly within the province of the jury.

The record clearly contains sufficient evidence to warrant the submission to the jury of the question "Did the defendant alienate the affections of the plaintiff's husband?" This being true and inasmuch as there is evidence of an association between the defendant and the plaintiff's husband sufficient to submit to the jury the question of whether or not this association culminated in the alienation of the affections of plaintiff's husband by the defendant, it would be a question of fact when, if at all, such alienation was finally accomplished. Was it accomplished within three years of the commencement of plaintiff's action or had it been accomplished prior thereto? If accomplished more than three years prior to the commencement of plaintiff's action, it became a question of fact when it was discovered by the plain-

tiff. The evidence in the case of an association by the defendant with the plaintiff's husband extending over a period of more than three years prior to the commencement of this action, taking into consideration that there was evidence that the plaintiff was aware of the association and made protests respecting it more than three years prior to the date of the writ, does not as a matter of law establish either that the defendant had accomplished the alienation of the affections of her husband three years prior to the institution of this action nor does it establish as a matter of law that the plaintiff had discovered the same even had it existed. Alienation of affections alone usually does not consist of a single act but rather a culmination of cumulative acts. It is ordinarily progressive in its nature and the record certainly presents a question of fact as to when, if at all, the conduct of the defendant culminated in the alienation of affections of plaintiff's husband and also, if accomplished, when it was discovered by the plaintiff. See *Palladino* v. *Nardi*, 133 Conn. 659, 1947; 54 A. (2nd) 265; *Smith* v. *Lyon*, 9 Ohio Appeals, 141 at 144; *Farneman* v. *Farneman*, 46 Ind. App. 453; 90 N. E. 775; 91 N. E. 968.

Our court has many times defined the principles of law relating to the propriety of granting a nonsuit or a directed verdict for the defendant and these rules are clearly set forth in the case of *Barrett* v. *Greenall*, 139 Me. Page 75 at Page 80; 27 A. (2nd) 599, in the following language:

"The principle of law which controls the action of this Court, when exceptions are presented to test the propriety of a nonsuit or a directed verdict for the defendant in the Trial Court, is to determine only whether upon the evidence under proper rules of law 'the jury could properly have found for the plaintiff,' *Johnson et al.* v. *New York, New Haven and Hartford Railroad et al.*, Ill Me., 263, 88 A., 988, 989 and in determining that issue, the evidence must be considered in that light which is most favorable to the plaintiff, *Shackford* v. *New England Tel. and Tel. Co.*, 112 Me., 204,

91 A., 931. The issue here is not whether the evidence adduced is sufficient to establish the controverted facts, but whether or not it has a tendency to establish those facts, and if this is so, although 'it may not be strong in its support, and the Judge may well apprehend that the jury will find it insufficient,' the Court has no 'right to weigh it, and determine its insufficiency as matter of law.' *Sawyer* v. *Nichols*, 40 Me., 212. It is the province of the jury, and not of the justice presiding in the Trial Court, to judge of the testimony of the witnesses appearing in the cause and to weigh their evidence, *Sweetser* v. *Lowell, et al.*, 33 Me., 446; *Blackington* v. *Sumner et al.*, 69 Me., 136. The credit to which the testimony of a witness is entitled is entirely a question of fact for decision by the jury. *Parsons* v. *Huff*, 41 Me., 410."

See also *Talia* v. *Merry*, 130 Me. 414; 157 A. 236, which was an alienation case wherein a verdict was directed for the defendant. Our court said in that case:

"Giving the most favorable view to the evidence introduced by the plaintiff, a *prima facie* case of alienation of the affections of the plaintiff's husband may be found. It is settled law that a verdict should not be directed for a defendant if, upon any reasonable view of testimony, under the law, the plaintiff can recover. *Tomlinson* v. *Clement Bros.* 130 Me. 189; 154 A. 355."

Applying the principles of law set forth in the above cited cases to the instant case, it is the opinion of this Court that it was reversible error to direct a verdict for the defendant.

The mandate will be

*Exceptions sustained.*