Ernest D. HARTT

v.

Sandra WIGGIN.

Supreme Judicial Court of Maine.

Nov. 3, 1977.

Bennett, Kelly & Zimmerman, P. A., by Peter J. DeTroy, III, John N. Kelly, Alton C. Stevens, Portland, for plaintiff.

Richardson, Hildreth, Tyler & Troubh by Robert L. Hazard, Jr., Portland, for defendant.

Before DUFRESNE, C. J., and WERNICK, ARCHIBALD, DELAHANTY and GODFREY, JJ.

GODFREY, Justice.

In an action for personal injuries and property damage resulting from an automobile accident, plaintiff-appellee Hartt obtained a verdict and judgment for $22,500 in Superior Court. From the denial of motions for judgment notwithstanding the verdict and for a new trial, defendant appeals, asserting that the trial justice erred in declining to give certain instructions to the jury and in refusing to declare a mistrial because of appellee's closing argument. No issue of negligence is presented.

From the evidence it could have been found that immediately after the accident appellee suffered from pain and stiffness in his neck and upper back as the result of muscle spasms along the cervical and upper dorsal regions of his spine. Shortly thereafter he began also to have similar spasms along the mid-dorsal region. However, not until nearly a month after the accident did appellee complain of pain and weakness in the lower or lumbar region of his spine.

At trial the plaintiff sought compensation for damages to his automobile and for medical expenses and lost wages incurred between the time of the accident and the time of trial. He also sought to prove that as a direct result of the accident he had suffered a fifteen percent permanent impairment of function of his back entitling him to compensation for future medical expenses, lost earning capacity, and pain and suffering.

After both sides had rested, appellant requested a jury instruction to the effect that there was no competent evidence establishing a causal relationship between the occurrence of the accident and the permanent impairment for which plaintiff sought damages. The presiding justice's refusal to give that requested jury instruction is raised as appellant's first point on appeal.

Three different doctors diagnosed the problem in appellee's lumbar region as spondylolysis, a pre-existing developmental condition involving a defect in the bone at the L-5 vertebra. There was expert testimony that spondylolysis would often not manifest itself, causing pain and weakness, until particular stress of trauma caused the condition to become symptomatic.

The physician who treated appellee, Dr. Waecker, testified that appellee's lower back problem, while pre-existing, became aggravated and symptomatic as a direct result of the accident even though the condition did not manifest itself until one month after the accident. However, a second doctor, called by appellant, gave as his opinion that although appellee did in fact suffer a fifteen percent permanent impairment as a result of spondylolysis it was improbable that it would take a month from the time of trauma for the condition to become symptomatic. He therefore concluded that appellee's symptomatic back problem was not causally related to the accident. A third doctor thought it "significant" that the lower back condition did not become symptomatic until a month after the accident.

■ The record thus shows that according to the doctors appellee did suffer from a fifteen percent permanent impairment of function of his back and that in one doctor's opinion this condition, while pre-existing in a latent state before the accident, was triggered and became symptomatic as a direct result of the accident. Although Dr. Waecker's opinion was not binding on the jury it was sufficient evidence of causation to place that particular issue before the jury. The fact that two other doctors disagreed with Dr. Waecker's opinion went to the weight and credibility of his testimony but did not justify taking the issue of causation away from the jury. The trial judge therefore properly denied appellant's requested jury instruction.

The only other issue that requires discussion is raised by appellant's contention that plaintiff-appellee's closing argument in-

volved "an improper, incorrect and inappropriate mathematical computation of future medical care, future drug costs, future loss of wages, and future loss of rental income which was based on alleged facts not in evidence before the jury, and unproven."

From the evidence before them the jury could have found that in the three and one-half years after the accident and before trial, the plaintiff had visited his doctor about once a month, complaining of pain and weakness in his back. His doctor testified that appellee's subjective complaints were always confirmed by objective findings made during the course of examination. On most of those visits to the doctor, appellee was given a manipulative treatment to re-align the spine temporarily and relieve the pain. Appellee testified that his last visit to the doctor cost ten dollars. In addition to receiving manipulative treatments, appellee had also been taking muscle relaxants and painkilling drugs prescribed by his doctor. Appellee testified that his bill for those drugs alone amounted to about twenty-eight dollars a month.

By December of 1974 his treating physician had concluded that appellee suffered from "chronic mid-dorsal and lumbar muscle spasticity." In his opinion appellee would have to live with his back problem for the rest of his life. It might even worsen and become acute at times.

■ It was permissible for the jury to infer from that evidence that appellee's back condition would persist as it had persisted for the preceding three and one-half years and that appellee would reasonably continue to seek the same forms of relief and treatment in the future as he had in the past. Under those circumstances the cost and frequency of past medical treatment, the average monthly cost of medication, and appellee's life expectancy were proper factors to be considered in assessing future medical costs.

Appellee testified that before the accident he and his wife had supplemented their income by purchasing, restoring and reselling various rental properties. They also rented portions of buildings while they were being restored. In order to save on the expense of restoration and thereby increase his profit on resale, appellee had done much of the plumbing, carpentry and painting himself. He testified that after the accident his efforts to engage in such activity were frustrated because of pain and weakness in his back. It was his doctor's opinion that such work would aggravate his back problem.

In his closing argument appellee asked the jury to award him $60,461.10 for damages other than pain and suffering. He arrived at that figure in the course of his closing argument by adding the following amounts: loss in market value of the car, $2,300; actual medical costs to the date of trial, $1,035.10; lost wages resulting from absence from employment, $523; other resulting loss of employment income of plaintiff for two years $1,612; lost future profits from plaintiff's projects in restoring rental buildings computed by subtracting plaintiff's rental income from such projects in 1974 (the third year after the accident) from such income in 1970 (the year before the accident) and multiplying that figure by 30 (the number of years from date of trial until plaintiff would reach 65), $36,797; projected future costs of medical treatment, obtained by taking current monthly medical expenses and multiplying them by a figure reflecting his life expectancy obtained from mortality tables, $5,772; and future costs, similarly projected, for drugs and medication, $12,432. Also in closing argument, appellee suggested an identical amount of $60,461.10 as appropriate for pain and suffering. Thus, the total award plaintiff requested in closing argument amounted to $120,922.20.

■ The jury awarded appellee only $22,500 for all his damages. Appellant moved for a mistrial on the general ground that appellee's closing argument projected a computation of future expenses and losses that was based "on false mathematical premises" and "on facts not before the jury." Appellant did not say what "mathematical premises" he considered false or what statements of fact he considered not based on evidence.

There was evidence in the record relating to each of the general areas of damage referred to in appellee's closing argument. The trial justice instructed the jury to consider the evidence as they remembered it and not to accept statements of counsel as evidence. In view of appellant's failure to bring any specific fallacies to the attention of the trial justice, we conclude that the court did not abuse its discretion in refusing to grant a mistrial as a result of suggestions in appellee's closing argument. *See Quinn v. Moore*, Me., 292 A.2d 846 (1972).

■ Appellant's motion for a mistrial was also grounded on the assertion that appellee's closing statement included an objectionable per diem argument on pain and suffering. The suggestion by appellee of a specific dollar amount for pain and suffering is not objectionable in itself. *See Horner v. Flynn*, Me., 334 A.2d 194 (1975). Appellant points out that the amount suggested was equal to the total of other damages some of which represented expected future expenses and losses computed on a so-called "per diem" basis. Appellant contends that appellee was thus suggesting, in effect, a per diem calculation of damage for pain and suffering. The appellee did not in fact present a per diem argument for pain and suffering in his closing statement, and his suggestion cannot be construed as having the effect of one. *See Horner v. Flynn*, cited above, at 206. On the facts of this case it is wholly unnecessary for us to pass upon the propriety of so-called per diem argument for pain and suffering, and we intimate no opinion whatever on that question.

■ Assessment of damages is the sole province of the jury, and its award will stand in the absence of a demonstration that it acted improperly. *Kaler v. Webster*, Me., 348 A.2d 702 (1975); *Isaacson v. Husson College*, Me., 332 A.2d 757 (1975). There was ample evidence in this case to find that as a direct result of appellant's negligent conduct appellee sustained substantial damage to his automobile and a fifteen percent permanent impairment of function of his back, with consequent damages.

Accordingly, the entry is:

Appeal denied.

Judgment affirmed.

POMEROY, J., did not sit.

DUFRESNE, A. R. J., sat at oral argument as Chief Justice, but retired prior to the preparation of the opinion. He has joined the opinion as Active Retired Justice.

All Justices concurring.